[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties married in Stratford, Connecticut on May 17, 1969. Both parties have resided continuously in the State of Connecticut for more then one year next preceding the date of the filing of the complaint. No children were born issue of the marriage. The evidence presented indicates that this marriage has irretrievably broken down and judgment may enter dissolving the marriage on that ground.
The court makes the following findings:
The wife, age 49, was employed at various times throughout the marriage. The last employment was in 1981 when she was working as a secretary with bookkeeping responsibilities for a real estate investment trust located in Westport, Connecticut. She then worked full time and had been with that company for seven years. Due to certain changes within that business, the wife left that job and took a year off. Following that year the CT Page 9148 wife decided not to return to work. She has not worked since.
The wife is currently taking medication for a balance and gait disorder. She testified that the onset of symptoms of that disorder occurred in October 1986. She sought treatment six months later. The disorder causes dizziness and vision deficiencies. She must lie down to resolve the symptoms. The only medication being taken by the wife is commonly prescribed for motion sickness. She is still able to operate an automobile and consume alcohol. In order to obtain diagnosis and treatment for this condition, the wife visited a substantial number of doctors, including the Lahey Clinic in Massachusetts, the Braintree Clinic in Massachusetts and the Mayo Clinic in Rochester, Minnesota. The parties felt that the medical expenses and testing procedures were getting too expensive and then agreed to be bound by the diagnosis and recommendation of the Mayo Clinic. Not withstanding this medical evidence, the husband claims that the wife is capable of being employed. The wife claims that she cannot become gainfully employed due to this medical condition.
The husband, age 53, is self employed as a salesman of textile products used in residential bedrooms and bathrooms. He owns the business and reports his income and expenses on a self employed Schedule C basis. His customers are located throughout the United States and he is required to travel extensively. The majority of his business is conducted by driving in New England.
The husband's financial affidavit of October 25, 1996 indicates that his annual gross monthly income from employment is $90,972. That is footnoted in his financial affidavit; "net after business expenses." The parties last filed a joint income tax return in 1994. His gross income on Schedule C was $196,000. The tax return indicates that the husband deducts transportation, travel and entertainment and depreciation. He testified that the $150 per month on his financial affidavit for travel, entertainment and vacation is not included in the $27,000 per year of travel and entertainment costs deducted on his tax return. The automobile lease cost is $850 per month, and his total travel expenses were $16,222 as shown in the 1994 tax return. The court has examined the tax return for depreciation and finds that the deduction relates only to business type equipment.
The husband's office is in the marital home located at 108 Steephill Road, Weston, Connecticut. The court credits the CT Page 9149 husband's testimony that a substantial portion of his work is conducted on the road. It would appear to the court that some of the business expenses as shown on Schedule C may be personal expenses, but they are minimal at best. There was insufficient evidence offered for the court to calculate the extent of any personal expenses being deducted. The court therefore finds that the husband's gross income is as stated in his financial affidavit, $90,972 annually.
The parties have filed claims for relief. The wife is claiming that the current assets of the parties should be divided equally, as well as the additional sum of $106,000. The $106,000 does not appear on either parties' financial affidavit. The husband sold various assets and deposited the $106,000 proceeds into an existing joint bank account. He disputes the wife's claim that the $106,000 should be divided but does agree that the other assets should be divided equally.
The major asset of the parties is the marital home located at 108 Steephill Road, Weston, Connecticut. There is no mortgage on the property. The financial affidavits show different fair market values of the property. There was no testimony from a real estate appraiser. The parties did not testify as to their opinion as to market value. Both parties agree that the property should be sold and the net proceeds divided equally. Therefore, the court need not determine the market value of the marital home. The husband is claiming that additional expenses must be incurred to properly prepare the marital home for sale. The work includes interior painting, wallpapering, plaster repair, electrical work, landscaping and asbestos removal. The husband estimates these costs to be $14,500. He requests that the court order that these repairs be made prior to the sale and be paid equally by the parties prior to the sale of the marital home.
The parties own U.S. Savings Bonds, three investment accounts, various bank accounts, a certificate of deposit, two investments showing a current value of zero, multiple IRA's, a profit sharing plan, a money purchase plan, a Fire Fund Annuity, and one automobile. The husband owns two life insurance policies insuring his life in the total face amount of $40,000. The parties are members of the Aspetuck Valley Country Club in Weston, Connecticut. There are no major disputes concerning the existence or evaluation of the parties' assets.
The court has carefully considered the criteria set forth in CT Page 9150 Connecticut General Statutes §§ 46b-81 and 46b-82 in reaching the decisions reflected in the orders that follow.
The following orders may enter:
1. The husband shall pay to the wife periodic alimony in the amount of $3,200 per month payable on the first day of each calendar month until his death, the wife's death or the wife's remarriage, whichever event shall first occur. The first payment shall be due November 1, 1996.
2. After the sale of the marital home at 108 Steephill Road, Weston, Connecticut, the periodic alimony shall be reduced to $2,200 per month. The provisions of Connecticut General Statutes § 46b-86 (b) as amended from time to time shall apply to these orders of periodic alimony.
3. The real property located at 108 Steephill Road, Weston, Connecticut, shall be sold, and the net proceeds shall be divided fifty (50%) percent to the wife and fifty (50%) percent to the husband. Net proceeds shall be defined as the gross sales price less real estate commission, if any, attorney fees, conveyance taxes, recording fees, closing adjustments, unpaid real estate taxes, the money spent by the husband for "presale fix up costs" and any income tax escrow fund required to be established pursuant to this court order.
4. The husband, in his sole discretion, shall contract for and expend all sums necessary to prepare the real property for sale. These sums expended shall be known as "presale fix up costs" and shall be paid to the husband from the closing proceeds prior to the distribution of the net proceeds.
5. The husband shall pay for and be responsible for any and all normal and routine expenses with respect to the real property including current real estate taxes, homeowner's insurance, utilities, and routine maintenance. Any closing adjustments created thereby and paid to the parties for which the husband has paid, shall be paid to the husband at the closing from the gross sale price. Not withstanding the husband's obligations as to "presale fix up costs", each of the parties shall be responsible for one-half (1/2) of any "major repair" on the real property. A "major repair" shall be defined as any one item of repair that exceeds Five Hundred ($500) Dollars. No "major repair" shall be made without the prior written consent of both parties, which CT Page 9151 consent shall not be unreasonably withheld. Any dispute concerning a "major repair" shall be determined by the Superior Court at Stamford or any other court of competent jurisdiction. In the event a party pays all or a portion of an expense required to be paid by the other party under this paragraph, then the paying party shall be reimbursed for the extra amounts paid from the other party's share of the net proceeds from the sale of the house.
6. The husband and wife shall agree upon the listing price for the real property. If they cannot agree, each shall choose and pay for an appraiser and the appraisers shall choose a third appraiser. The cost for the third appraiser shall be shared equally by the husband and wife. If two appraisers agree as to the listing price, that figure shall be the listing price. If two appraisers cannot agree, the median listing price of the three appraisers shall be the listing price. The listing price shall be reviewed and adjusted, if need be, every thirty days using the same procedure as set forth in this paragraph. Any offer to purchase within five (5%) percent of the listing price must be accepted by both parties. Any offer which is not within five (5%) percent of this listing price may be accepted by the parties; and if they cannot agree, that issue or any other issue concerning the sale of the premises shall be determined by the Superior Court at Stamford or any other court of competent jurisdiction. Both parties shall cooperate fully in the sale of the premises and sign and provide all documents and information necessary to effect the sale.
7. Each party shall be responsible for his and her capital gains tax on the sale of the marital home. Each party shall furnish to the other party whatever documents that are necessary to be able to calculate, file and determine said capital gains tax.
8. The parties have agreed to file joint federal and state income tax returns for the year 1995. From the proceeds of the sale of real property, an interest bearing escrow account with a third party in the amount of $40,000 shall be established. The escrow agent shall pay the outstanding 1995 taxes, penalties, interest, as well as the costs of preparing said tax returns, excluding any capital gains tax attributable to the sale of the marital home at 108 Steephill Road, Weston Connecticut. Each party shall be responsible for one-half of the taxes, penalties, interest and preparation regarding the 1995 tax returns in the CT Page 9152 event that the escrow amount is insufficient. Any balance remaining in the escrow account shall be paid to the parties equally. The escrow agent shall not charge a fee.
9. If either party declines to sign a joint federal and state tax return for the calendar year 1995, either party may petition this court for an appropriate order and monetary relief in the form additional lump sum payments. The court will retain continuing jurisdiction to render such relief despite the fact that no periodic alimony has been ordered to the husband.
10. The husband will hold the wife harmless from any and all obligations arising out of all joint tax returns for any year including 1995 attributable to his income and business expenses.
11. The parties shall divide the assets listed in this paragraph equally. Each shall sign all documents and produce all records and information necessary to put into effect the orders of this court. The court recognizes that a number of these assets may fluctuate in value and therefore the parties are ordered to transfer the assets immediately so that no problems are created by the fluctuation of assets. The assets to be divided shall consist of the following:
Assets listed in wife's October 25, 1996 financial affidavit
(a). IRA.
(b). U.S. Savings Bond total face value of $120,000.
(Note — This same asset is listed in the husband's financial affidavit).
(c). Webster Certificate of Deposit.
Assets listed in husband's October 25, 1996 financial affidavit
(a). Paine Webber account T301094.
(b). Paine Webber account HK4587064.
(c). Fidelity account.
(d). Paine Webber IRA account TS0190AF. CT Page 9153
(e). Paine Webber IRA account HK4844264.
(f). Paine Webber Profit Sharing account HK49698.
(g). Paine Webber Money Purchase Plan account HK4969964.
(h). Paine Webber IRA account HK5922364.
(i). Fire Fund annuity.
12. The respective counsel shall prepare Qualified Domestic Relations Orders for submission and approval by both parties and the appropriate plan administrator to effect the transfer of the IRA's, profit sharing plan and money purchasing plan. The court shall retain continuing jurisdiction concerning the terms and conditions of each Qualified Domestic Relations Order.
13. The husband is awarded all right, title and interest in and to the following assets:
(a). any bond, stock and membership rights in the Aspetuck Valley Country Club in Weston, Connecticut.
(b). Westport Bank and Trust Company account.
(c). North Carolina Sheet Mill investment.
(d). Furman Selz investment.
14. The wife is awarded all right, title and interest in and to the following assets:
(a). 1990 Toyota Celica GTS automobile.
(b). People's Bank savings account.
(c). People's Bank checking account.
(d). jewelry listed in her financial affidavit.
15. The husband shall name the wife as irrevocable primary beneficiary of the Massachusetts Mutual insurance policy in the face amount of $25,000 and the Southwestern Life insurance policy in the face amount of $15,000. The husband shall not pledge, hypothecate or borrow against said policies. He shall pay all CT Page 9154 premiums. In the event said policies pay to the wife less than said $40,000, the balance shall be a claim in favor of the wife as against the husband's estate. The husband shall provide to the wife upon her written request, proof of compliance with the orders regarding these two insurance policies.
16. The husband shall pay for and hold the wife harmless from the liabilities listed in his financial affidavit. The IRS debt of $40,000 for 1995 as well as the Town of Weston real property taxes of $15,000 have been dealt with in another portion of this order and are not subject of this hold harmless order.
17. The wife shall pay for and hold the husband harmless from the debts listed in her financial affidavit.
18. The husband shall pay to the wife, as an allowance for counsel fees, the sum of $8,000.
19. The furniture and furnishings located in the family home at 108 Steephill Road in Weston, Connecticut and located in the residence at 8 Sea Breeze Avenue, Milford, Connecticut shall be divided equally between the parties. The court will retain continuing jurisdiction to monitor this division and to fashion whatever appropriate orders that are necessary.
20. The wife is requesting a court order that the husband provide $250,000 life insurance for the benefit of the wife. There was no evidence offered concerning the husband's health, his insurability, the availability of the insurance nor the cost of said insurance. The court therefore has no authority to order the purchase by the husband of any additional life insurance beyond the $40,000 that is currently in full force and effect.Michel v. Michel, 31 Conn. App. 338, 341 (1993).
21. The husband is ordered to provide any and all COBRA benefits concerning whatever insurance company and/or HMO the wife is eligible for. The wife shall pay all premiums therefore.
Judgment may enter accordingly.
Counsel for the plaintiff wife shall prepare the judgment file.
KEVIN TIERNEY, JUDGE CT Page 9155